## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RUSSELL ROSE,                      :
    Petitioner                 :
                         :          No. 1:22-cv-01373
    v.                         :
                         :          (Judge Rambo)
WARDEN A. BONCHER, et al.,          :
    Respondents                :

## MEMORANDUM

Pending before the Court is pro se Petitioner Russell Rose ("Petitioner")'s petition for a writ of habeas corpus filed pursuant to the provisions of 28 U.S.C. § 2241 ("Section 2241"). (Doc. No. 1.) Petitioner challenges his disciplinary proceedings, which resulted in, inter alia, the loss of good-conduct time. (Id.) For the reasons set forth below, the Court will deny Petitioner's Section 2241 petition.

## I.    BACKGROUND

Petitioner, a prisoner in the custody of the Federal Bureau of Prisons ("BOP"), is currently serving a two-hundred and ninety-two (292) month sentence imposed by the United States District Court for the District of Massachusetts for drug offenses. (Doc. No. 11-1 at 2, ¶ 3.) Petitioner entered BOP custody on June 6, 2013 (id. at 6), and his projected release date, via good-conduct time, is October 1, 2031 (id. at 2, ¶ 3; id. at 6).[1]

---

[1] According to the BOP's Inmate Locator, however, Petitioner's current release date is October 1, 2030. The BOP's Inmate Locator is available at the following address:

The facts underlying the imposition of the disciplinary sanctions against Petitioner are as follows. On May 10, 2021, Petitioner was issued Incident Report Number 3502449 ("Incident Report"), charging him with a violation of Prohibited Act Code 108—Possession, or Introduction of a Hazardous Tool.[2] (Id. at 32.) The Incident Report describes Petitioner's violation of Code 108 as follows:

> At approximately 7:40 a.m. on May 10th, 2021, I Counselor Ford, was conducting a search of cell P03-011L which belongs to [Petitioner]. Towards the end of my cell search, I noticed an abnormal seal with the trim that borders the cell floor and the wall. When I peeled back the trim, I noticed a small compartment in the wall with a plastic bag hanging out of it. Inside the plastic bag was a black L8 Star Mini cell phone and ear piece and battery pack.

(Id.)

The Incident Report was initially suspended on May 10, 2021, based upon a referral to the "FBI/AUSA" for possible prosecution. (Id. at 33.) On May 25, 2021, the "declination was received[,]" and the Incident Report was again suspended for "a rewrite due to clerical errors." (Id.) On May 26, 2021, a copy of the revised Incident Report was delivered to Petitioner. (Id. at 32, 33.) Petitioner was advised

---

https://www.bop.gov/inmateloc/.

[2]   The BOP's prohibited acts are set forth in 28 C.F.R. § 541.3, which, in turn, describes Code 108 as follows: "Possession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device). See 28 C.F.R. § 541.3 (Table 1, 108).

of his rights, acknowledged that he understood his rights, and declined to make a statement at that time.  (Id. at 33.)

Petitioner appeared before the Unit Disciplinary Committee ("UDC") on June 1, 2021.  (Id. at 32.)  He was advised of his rights and declined to make a statement to the UDC.  (Id.)  Ultimately, the UDC referred the decision to the Disciplinary Hearing Office ("DHO") "based on the severity of the Incident Report, and to allow for sanctions not available at the UDC level."  (Id.)  In addition, Petitioner signed a form titled, Notice of Discipline Hearing before the (DHO), indicating that he did not wish to have a staff representative or to call any witnesses.  (Id. at 35.)  Petitioner also signed a form titled, Inmate Rights at Discipline Hearing, wherein he acknowledged that he had been advised of his rights before the DHO, including: (1) the right to receive a written copy of the charges at least twenty-four (24) hours prior to the hearing; (2) the right to have a staff member who is reasonably available to serve as a staff representative at the hearing; (3) the right to call witnesses, present witness statements, and introduce documentary evidence, "provided institutional safety would not be jeopardized;" (4) the right to present a statement or to remain silent; (5) the right to be present throughout the disciplinary hearing; and (6) the right to receive written notice of the DHO's decision and the facts supporting the decision. (Id. at 36.)

On June 16, 2021, Petitioner appeared before the DHO.  (Id. at 38.)  The DHO reviewed Petitioner's due process rights with Petitioner, who stated that he understood those rights.  (Id. at 39.)  In addition, the DHO read aloud the Incident Report to Petitioner.  (Id.)  As noted in the DHO's decision, Petitioner waived his right to a staff representative, as well as his right to call witnesses, and he did not present any written documentation as evidence or assert any procedural issues during the hearing.  (Id. at 38, 39.)  As for his statement on the disciplinary charge, Petitioner denied possession of the cell phone, stating: "I never searched the wall. It's not mine.  I never looked at the trim on the wall."  (Id. at 38.)

In issuing his/her decision, the DHO noted that Petitioner did not receive a copy of the Incident Report within twenty-four (24) hours of staff becoming aware of the incident, and that the UDC did not hold a hearing within five (5) working days of staff becoming aware of the incident.  (Id. at 39.)  The DHO also noted, however, that the Incident Report had been suspended pending the potential involvement of an outside agency (i.e., the FBI), and the Incident Report needed to be rewritten in order to clarify the underlying incident.  (Id.)  The DHO determined that this delay did not create any undue hardship in Petitioner's ability to defend himself at the hearing.  (Id.)

Based upon the greater weight of the evidence, the DHO ultimately found that Petitioner committed a violation of Prohibited Act Code 108—Possession, or

Introduction of a Hazardous Tool.   (<u>Id.</u>)   The DHO based this finding on the reporting officer's written account of the underlying incident, the documentary evidence (<u>i.e.</u>, "Memo/Email's from M. Ford, Photo of contraband"), and Petitioner's statement during the hearing.  (<u>Id.</u> (stating that Petitioner's claim of not knowing that the cell phone was in his cell was without merit because he was the only one assigned to the cell, and since staff easily discovered the cell phone during a search of his cell, Petitioner could have just as easily discovered the cell phone).)

As a result of this finding, the DHO sanctioned Petitioner with a disallowance of forty-one (41) days of good-conduct time, sixty (60) days disciplinary segregation, and six (6) months loss of commissary and visiting privileges.  (<u>Id.</u>) The DHO explained the reasoning for these sanctions as follows:

> The action/behavior on the part of any inmate to possess a hazardous tool (e.g. hacksaw, blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device) in any correctional institution seriously jeopardizes the security of the institution and poses a threat to the ability of staff to provide for the safety and security for staff, inmates and the general public as a whole.  The sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behaviors at all times.

(<u>Id.</u> at 40.)

Petitioner was advised of the DHO's findings, the specific evidence relied upon, the sanctions imposed, and the reasons for those sanctions. (<u>Id.</u>)  Petitioner was also advised of his right to appeal the DHO's decision.  (<u>Id.</u>)  On June 30, 2021,

Petitioner was provided with a copy of the DHO's decision.  (Id.)  It appears that Petitioner then pursued his administrative remedies.  See, e.g., (Doc. No. 11 at 2–3).[3]

On September 6, 2022, while Petitioner was incarcerated at Federal Correctional Institution Schuylkill ("FCI Schuylkill") in Minersville, Pennsylvania, he commenced the above-captioned action by filing his Section 2241 petition (Doc. No. 1), along with a supporting memorandum of law (Doc. No. 2), and various exhibits (Doc. Nos. 2-1 through 2-3). Petitioner asserts due process violations in connection with his disciplinary proceedings for the Incident Report. (Doc. Nos. 1, 2.)  Specifically, he claims that he did not receive a copy of the Incident Report within twenty-four (24) hours of the underlying incident and that the UDC did not review the Incident Report within five (5) working days.  (Id.)  As for relief, he seeks, inter alia, the restoration of his good conduct time.  (Id.)

On November 9, 2022, after Petitioner paid the requisite filing fee (Doc. Nos. 7, 8), the Court deemed the petition filed, directed service of the petition on Respondent (i.e., the Warden at FCI Schuylkill), and directed Respondent to respond

---

[3]  The parties sharply dispute whether Petitioner properly exhausted available administrative remedies.  (Doc. Nos. 2, 11.)  Because, however, the Court ultimately concludes that the petition is without merit, the Court need not address the sharply disputed issue of exhaustion.  See Turnage v. U.S. Att'y Gen., No. 07-cv-01391, 2009 WL 604141, at *4 (M.D. Pa. Mar. 9, 2009) (declining to determine whether Section 2241 petitioner should be excused from failing to exhaust his administrative remedies because the petition was without merit).

to the allegations contained in the petition within twenty (20) days.  (Doc. No. 9.)
On November 29, 2022, Respondent filed a response. (Doc. No. 11.)  Petitioner
subsequently filed, inter alia, two (2) motions seeking an extension of time in which
to file a reply (Doc. Nos. 13, 16), both of which were granted by the Court (Doc.
Nos. 15, 17).  As reflected by the Court's docket, however, Petitioner has not filed a
reply, and the time period for doing so has long since expired.

Thus, the instant Section 2241 petition is ripe for the Court's resolution.  For
the reasons discussed below, the Court will deny the petition.

## II.   DISCUSSION

Generally speaking, Section 2241 confers federal jurisdiction over a habeas
petition that has been filed by a federal inmate who challenges "not the validity but
the execution of his sentence."  See Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir.
2012) (citations and footnote omitted); Woodall v. Fed. Bureau of Prisons, 432 F.3d
235, 241 (3d Cir. 2005) (stating that Section 2241 "allows a federal prisoner to
challenge the 'execution' of his sentence in habeas").  While "the precise meaning
of 'execution of the sentence' is hazy[,]" see id. at 242, the United States Court of
Appeals for the Third Circuit ("Third Circuit") has defined this phrase to mean "put
into effect" or "carry out."  See id. at 243 (citation and internal quotation marks
omitted).

As a result, a federal inmate may challenge conduct undertaken by the BOP that affects the duration of the inmate's custody.  See, e.g., Barden v. Keohane, 921 F.2d 476, 478–79 (3d Cir. 1990) (finding that a federal inmate's petition is actionable under Section 2241, where the inmate attacks the term of his custody by challenging the manner in which the BOP is computing his federal sentence); Queen v. Miner, 530 F.3d 253, 254 n.2 (3d Cir. 2008) (noting that a challenge to a disciplinary action resulting in the loss of good-conduct time is properly brought pursuant to Section 2241, because "the action could affect the duration of the petitioner's sentence" (citations omitted)).

Here, Petitioner's Section 2241 petition asserts a due process challenge under the Fifth Amendment to the United States Constitution based upon allegations concerning his disciplinary proceedings, which resulted in, inter alia, a loss of good conduct time.  (Doc. Nos. 1, 2.)   As such, the Court finds that Petitioner's due process challenge is properly brought pursuant to the provisions of Section 2241. That said, the Court turns to the governing legal standard.

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law[.]"  See U.S. Const. amend. V.  Prisoners have a constitutionally protected liberty interest in good-conduct time.   See Wolff v. McDonnell, 418 U.S. 539, 555-57 (1974). However, "while prisoners retain certain basic constitutional rights, including the

protections of the [D]ue [P]rocess [C]lause, prison disciplinary hearings are not part of criminal prosecution, and inmates' rights at such hearings may be curtailed by the demands and realities of the prison environment." See Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991) (citing Wolff, 418 U.S. at 555-56.)

In Wolff, the United States Supreme Court set forth the due process protections that prisoners are entitled to "when prison officials seek to deprive them of good-time credits[.]" See Burns v. PA Dep't of Corr., 642 F.3d 163, 171-72 (3d Cir. 2011). Those protections require: (1) an impartial decision-making body; (2) written notice of the charges, which must be given to the prisoner no less than twenty-four (24) hours before his appearance at the disciplinary hearing so that he can marshal the facts and prepare a defense; (3) the opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals;" and (4) a written statement by the fact finder as to the evidence relied upon and the reasons for the disciplinary action. See Wolff, 418 U.S. at 563–71. Additionally, the United States Supreme Court has explained that, where an illiterate prisoner is involved or where the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence that is necessary for an adequate command of the case, the prisoner "should be free to seek the aid of a fellow inmate, or if that is forbidden, to

have adequate substitute aid in the form of help from the staff or from a sufficiently competent [prisoner] designated by the staff." See id. at 570.

Where, as here, a prisoner challenges a disciplinary proceeding that deprived him of good-time credits, "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke [such] credits." See Superintendent, Massachusetts Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985). In other words, "[t]his standard is met if there was some evidence from which the conclusion of the [disciplinary board] could be deduced[.]" See id. (citation and internal quotation marks omitted). Thus, determining "whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." See id. Rather, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." See id. at 455–56 (emphasis added) (citations omitted).

The United States Supreme Court has declined to embrace "a more stringent evidentiary standard as a constitutional requirement." See id. at 456. And, in declining to do so, the Supreme Court has explained as follows:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. See Wolff, 418 U.S., at 562–563[.] The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some

10

basis in fact. Revocation of good time credits is not comparable to a criminal conviction, id. at 556[,] and neither the amount of evidence necessary to support such a conviction, see Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), nor any other standard greater than some evidence applies in this context.

See id.

Having set forth the governing legal standard, the Court turns to Petitioner's instant habeas claims. First, Petitioner claims that he did not receive a copy of the Incident Report within twenty-four (24) hours of staff becoming aware of the underlying incident. And, second, Petitioner claims that the UDC did not review the Incident Report within five (5) working days of staff becoming aware of the incident. (Doc. Nos. 1, 2.) As for the Incident Report, Petitioner appears to be relying on 28 C.F.R. § 541.5(a). (Doc. No. 2 at 2.) As for the UDC hearing, Petitioner appears to be relying on 28 C.F.R. § 541.7(b). (Id.) For the reasons discussed below, both of Petitioner's claims are meritless.

### A.    The Incident Report

Section 541.5(a) states, in relevant part, that "[a] staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing. You will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident." See 28 C.F.R. § 541.5(a) ("Section 541.5(a)") (emphasis added). While this regulation establishes that an inmate will "ordinarily" receive the incident report within twenty-four (24) hours of

11

staff becoming aware of the inmate's involvement, it does not require or mandate that the inmate receive the incident report within that timeframe.  See Bullard v. Scism, 449 F. App'x 232, 235 (3d Cir. 2011) (unpublished) (affirming district court's conclusion that prison officials did not violate BOP regulation because the regulation did not "require" that a hearing be held within so many days, only that the hearing will "ordinarily" take place within that amount of time (emphasis in original)).

Moreover, the Third Circuit has addressed this issue—albeit in nonprecedential opinions—and has found that an inmate's alleged failure to receive notice of the charges within twenty-four (24) hours after prison staff become aware of the incident does not in itself rise to a due process violation.  See, e.g., Gross v. Warden, USP Canaan, 720 F. App'x 94, 96–97 (3d Cir. 2017) (unpublished); Lang v. Sauers, 529 F. App'x 121, 123 (3d Cir. 2013) (unpublished); Millhouse v. Bledsoe, 458 F. App'x 200, 203 (3d Cir. 2012) (unpublished).

Finally, Petitioner has not shown, and there is no evidence of record to suggest, that he did not receive a copy of the Incident Report or that he was prejudiced by prison staff's non-compliance with Section 541.5(a).  Rather, the evidence of record establishes that a copy of the Incident Report was delivered to Petitioner on May 16, 2021, at 4:38 p.m., and that his hearing before the DHO was not held until June 15, 2021, at 9:02 a.m. (Doc. No. 11-1 at 32, 38.)  Petitioner,

12

therefore, had over twenty (20) days to prepare for his hearing.  Additionally, the evidence of record also establishes that the DHO read aloud the Incident Report to Petitioner and that Petitioner's statement, regarding the underlying incident, did not indicate that he was unaware of the disciplinary charge against him.  (Id. at 38.)

Accordingly, for all of these reasons, the Court concludes that Petitioner's due process claim concerning the Incident Report is without merit.  In reaching this conclusion, the Court notes that "Wolff only requires that an inmate receive written notice of the charges at least 24 hours before a hearing. Wolff does not require the issuance of an incident report within 24 hours of the incident[.]"  See Gross, 720 F. App'x at 96.  And, here, Wolff's requirement was met.  Thus, Petitioner's Section 2241 petition will be denied as to this claim.

### B.    The UDC Hearing

Section 541.7(c) states, in relevant part, that "[t]he UDC will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays."  See 28 C.F.R. § 541.(c) ("Section 541.(c)") (emphasis added).  Much like Section 541.5(a) discussed above, this regulation establishes that the UDC will "ordinarily" review the incident report within five (5) working days, but it does not require or mandate that the UDC do so.  See Bullard, 449 F. App'x at 234–35.

Additionally, the Third Circuit has addressed this issue—albeit in a nonprecedential opinion—and has found that the alleged failure of the UDC to hold the inmate's hearing on the incident report within the applicable time period did not, by itself, amount to a due process violation.  See id.; see also Salmon v. Quay, No. 21-cv-01714, 2022 WL 1271718, at *9 (M.D. Pa. Apr. 28, 2022) (finding no due process violation where, inter alia, the applicable regulation did not "mandate" that the UDC hold a hearing on the incident report within five (5) working days).

Finally, Petitioner does not argue, and the evidence of record does not suggest, that he did not receive an initial hearing before the UDC or that he suffered any prejudice from the UDC's non-compliance with Section 541.7(c).  Instead, the evidence of record demonstrates that, on June 1, 2021, Petitioner received a hearing before the UDC, at which he was advised of his rights regarding the charged violation and the DHO hearing.  (Doc. No. 11-1 at 32, 35, 36.)  And, as discussed above, the evidence of record also demonstrates that Petitioner received such notice of the disciplinary charge well in advance of his hearing before the DHO.  (Doc. No. 11-1 at 32, 38.)

Accordingly, for all of these reasons, the Court concludes that Petitioner's due process claim concerning his initial UDC hearing is without merit.  In reaching this conclusion, the Court notes that "due process requirements in [the prison disciplinary context] context are minimal, and [that] they are met here."  See Thompson v.

14

<u>Owens</u>, 889 F.2d 500, 502 (3d Cir. 1989).  Thus, Petitioner's Section 2241 petition will be denied as to this claim.

Although Petitioner does not assert any other claims in his Section 2241 petition, the Court notes that, not only did Petitioner receive advance written notice of the disciplinary charge against him, but he appeared before an impartial DHO, where he had the opportunity to have a staff representative assist him, and where he had the opportunity to make a statement, call witnesses, and present documentary evidence on his behalf.  In addition, following the hearing, Petitioner received a written statement by the DHO concerning the DHO's findings, the evidence relied upon, the sanctions imposed, and the reasons for the sanctions.  And, finally, the Court notes that the DHO's decision was supported by "some evidence" of Petitioner possessing the cell phone, which, in turn, is sufficient to uphold Petitioner's disallowance of good-conduct time.  More specifically, the evidence of record establishes that the DHO relied upon the written account of the reporting officer, the documentary evidence, and Petitioner's statement.  The requirements of due process, therefore, have been satisfied here.  <u>See</u> <u>Hill</u>, 472 U.S. at 455 (explaining that "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits").

**III.   CONCLUSION**

Accordingly, for all of the foregoing reasons, the Court will deny the instant Section 2241 petition.  (Doc. No. 1.)  An appropriate Order follows.


Dated: November 30, 2023                         s/ Sylvia H. Rambo
                                                 SYLVIA H. RAMBO
                                                 United States District Judge